Filed 9/15/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| HI-DESERT MEDICAL CENTER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TOBY DOUGLAS, as Director, etc., et al.,<br><br>    Defendants and Respondents. | B253268<br><br>(Los Angeles County<br>Super. Ct. No. BS141620)<br><br>**ORDER MODIFYING OPINION**<br><br>**[NO CHANGE IN JUDGMENT]** |
| MODOC MEDICAL CENTER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TOBY DOUGLAS, as Director, etc., et al.,<br><br>    Defendants and Respondents. | B255441<br><br>(Los Angeles County<br>Super. Ct. No. BS141984) |
| DIGNITY HEALTH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TOBY DOUGLAS, as Director, etc., et al.,<br><br>    Defendants and Respondents. | B256894<br><br>(Los Angeles County<br>Super. Ct. No. BS143421) |

GEORGE L. MEE MEMORIAL
HOSPITAL,

     Plaintiff and Respondent,

     v.

TOBY DOUGLAS, as Director, etc., et al.,

     Defendants and Appellants.

B257021

(Los Angeles County
Super. Ct. No. BS144918)


THE COURT:[*]

     It is ordered that the opinion filed herein on August 18, 2015, be modified as follows:

> At the end of the second full paragraph on page 17, after the sentence ending "the instant case as in the *Mission* litigation," delete footnote 10, which will require renumbering of all subsequent footnotes.

     There is no change in the judgment.

---

[*] BOREN, P. J.,         ASHMANN-GERST, J.         HOFFSTADT, J.

Filed 8/18/15 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| HI-DESERT MEDICAL CENTER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TOBY DOUGLAS, as Director, etc., et al.,<br><br>    Defendants and Respondents. | B253268<br><br>(Los Angeles County<br>Super. Ct. No. BS141620) |
| MODOC MEDICAL CENTER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TOBY DOUGLAS, as Director, etc., et al.,<br><br>    Defendants and Respondents. | B255441<br><br>(Los Angeles County<br>Super. Ct. No. BS141984) |
| DIGNITY HEALTH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TOBY DOUGLAS, as Director, etc., et al.,<br><br>    Defendants and Respondents. | B256894<br><br>(Los Angeles County<br>Super. Ct. No. BS143421) |

GEORGE L. MEE MEMORIAL
HOSPITAL,

      Plaintiff and Respondent,

      v.

TOBY DOUGLAS, as Director, etc., et al.,

      Defendants and Appellants.

B257021

(Los Angeles County
Super. Ct. No. BS144918)

APPEALS from judgments of the Superior Court of Los Angeles County. Luis A. Lavin and James C. Chalfant, Judges.  Affirmed in part and reversed in part.

Law Offices of Thomas J. Weiss, Thomas J. Weiss and Lindsay K. Seltzer for Plaintiffs and Appellants in B253268 and B25541.

Hooper, Lundy & Bookman, Lloyd A. Bookman and Jordan B. Keville for Plaintiff and Appellant in B256894.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Leslie P. McElroy, and Janet E. Burns, Deputy Attorneys General, for Defendants and Appellants in B257021.

Law Offices of Thomas J. Weiss, Thomas J. Weiss and Lindsay K. Seltzer for Plaintiff and Respondent in B257021.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Jennifer M. Kim, Richard T. Waldow, Andrea F. Ventura, Jon F. Worm, and Kristen T. Dalessio, Deputy Attorneys General, for Defendants and Respondents in B253268, B255441, and B256894.

———————————————————

This appeal is the latest attempt by various hospitals[1] to recoup financial reimbursement from the Department of Health Care Services (the Department) following their successful petition for writ of mandate to have SB 1103[2] invalidated. Although the hospitals failed to seek monetary damages in that original petition for writ of mandate, they did request financial reimbursement in administrative proceedings, which were stayed at the hospitals' request pending resolution of court proceedings; they also sought monetary relief from the trial court in a motion to amend their original petition for writ of mandate and in a new court proceeding, which they later dismissed. After all of the court proceedings terminated, the administrative law judges (ALJ) dismissed the administrative proceedings, prompting the underlying petitions for writ of mandate. At issue is whether the ALJs properly dismissed the administrative proceedings on the grounds that the hospitals' requests for financial reimbursement are barred by the doctrine of res judicata.

We conclude that Dignity Health, Hi-Desert, and Mee's requests are all barred by the doctrine of res judicata. The hospitals could have requested monetary damages in their original petition for writ of mandate, as has already been pointed out to the parties by the Court of Appeal, Third Appellate District, but they failed to do so. The parties are bound by that decision and cannot circumvent it by seeking writ relief here.

Regarding Modoc, we conclude that its request is barred by the doctrine of forfeiture given its failure to object or otherwise oppose the Department's motion to dismiss in front of the ALJ.

---

[1] The hospitals in these appeals include Dignity Health, doing business as San Gabriel Valley Medical Center (Dignity Health), Hi-Desert Medical Center (Hi-Desert), Modoc Medical Center (Modoc), and George L. Mee Memorial Hospital (Mee). As set forth in detail below, Modoc was not a party to the original writ proceedings in Sacramento, but it does now seek the same relief as the original hospital-petitioners.

[2] Senate Bill No. 1103 (2003-2004 Reg. Sess.) (SB 1103).

**FACTUAL AND PROCEDURAL BACKGROUND**

*Factual Background*

    A.  <u>Enactment of SB 1103</u>

The federal Medicaid program provides financial assistance to states that offer medical treatment to needy persons. (*Mission Hospital Regional Medical Center v. Shewry* (2008) 168 Cal.App.4th 460, 469–470 (*Mission I*).) "California participates in the federal Medicaid program through the Medi-Cal program," and the Department is the state agency authorized to administer the Medi-Cal program. (*Id.* at p. 474.)

In 2004, the Legislature enacted SB 1103, which limited reimbursement rates to noncontract hospitals, including all four hospitals here. (*Mission I*, *supra*, 168 Cal.App.4th at p. 476.)

    B.  <u>Challenge to SB 1103; Sacramento Superior Court Denies Writ to the</u> <u>Hospitals</u>

Dignity Health, Hi-Desert, and Mee (collectively the petitioners),[3] along with other noncontract hospitals, challenged SB 1103 in September 2005 via a petition for writ of mandate pursuant to Code of Civil Procedure section 1085[4] in Sacramento Superior Court. The petitioners specifically alleged that SB 1103 was invalid, with "some expecting losses of $1 million or more as a result of the reimbursement freeze." While the writ petition prayed for declaratory and injunctive relief, it did not request monetary relief.

On December 19, 2006, the Sacramento Superior Court rejected most of the petitioners' allegations. The petitioners filed an appeal. (*Mission I*, *supra*, 168 Cal.App.4th at pp. 477–478.)

---

[3]     Modoc was not a petitioner in the original *Mission* petition.

[4]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

C.  Administrative Action and Stay Pending Resolution of *Mission I*

Meanwhile in early 2006 and 2007, the Department issued its audited cost reports for the 2004-2005 fiscal year to the hospitals.  While *Mission I* was pending, the hospitals each filed an administrative action challenging their audit reports on the grounds that the reimbursement cap (SB 1103) was illegal.  Dignity Health, Hi-Desert, and Mee separately advised each ALJ that it was a plaintiff in the pending *Mission* action.  Each of these hospitals represented:  "Since this issue should be resolved in the [pending Court of Appeal decision], the [hospital] hereby requests that this appeal be put in abeyance pending the outcome of the [*Mission* appeal]."

Although it was not a petitioner in the original *Mission* petition, Modoc requested that the hearing set on its audit report be taken off calendar because "the same issues involved in this case are being heard in a pending state court action," and the upcoming decision in *Mission I* would "impact" its case.

Each ALJ granted each hospital's request for abeyance to await a decision in *Mission I*.

D.  Victory for the Hospitals in *Mission I*

On November 19, 2008, the Court of Appeal, Third Appellate District, reversed the trial court's judgment on one legal ground only, concluding that the Legislature had failed to comply with the notice and comment procedures of title 42 United States Code section 1396a(a)(13)(A).  (*Mission I*, *supra*, 168 Cal.App.4th at p. 480.)  The Court of Appeal ordered the Sacramento Superior Court to issue a writ of mandate prohibiting the Department from applying SB 1103 in calculating the petitioners' reimbursement rates for the state fiscal year 2004-2005.  (*Id*. at p. 493.)

E.  Motion to Enforce the Writ; Writ Granted as Requested by the Hospitals

After remand, on April 22, 2009, the Sacramento Superior Court issued a writ of mandate prohibiting the Department from applying SB 1103 in computing reimbursement rates for the fiscal year 2004-2005.  (See *Mission Hospital Regional Medical Center v. Douglas* (May 25, 2011, C062792) 2011 Cal.App. Lexis 4036, at p. *1 (*Mission II*).)  The parties disputed whether this decision applied retroactively.  The Department believed

5

that, by this time, it had already applied SB 1103 and reimbursed most of the noncontract hospitals.  The hospitals, on the other hand, claimed that *Mission I*'s holding entitled them to both retroactive and prospective relief.  (*Mission II*, *supra*, at p. *2.)  Thus, the petitioners filed a motion to enforce the writ of mandate, asking the trial court to order the Department "to recalculate the reimbursement amounts for 2004-2005 for all plaintiffs and to reimburse them the amounts they would have received for that fiscal year had Stats. section 32 not been applied."  (*Mission II*, *supra*, at pp. *6–*7.)

The trial court granted the hospitals' petition, and the Department appealed. (*Mission II*, *supra*, 2011 Cal.App. Lexis 4036, at pp. *7–*8.)

F.  Court of Appeal Reverses Trial Court (*Mission II*)

The Court of Appeal, Third Appellate District, reversed the trial court order enforcing the writ, holding that the trial court "lacked jurisdiction to authorize additional relief beyond what [had been] ordered."  (*Mission II, supra*, 2011 Cal.App. Lexis 4036, at p. *8.)  The Court of Appeal reasoned as follows:  In *Mission I*, the petitioners only sought "prospective declaratory and mandamus relief"; they did not request any other type of relief, including "financial reimbursement."  (*Mission II*, *supra*, at p. *10.)  While the Court of Appeal was expressly "sympathetic to plaintiffs' and the trial court's efforts to ensure the state does not enrich itself pursuant to its unlawful acts, which are here established by the Legislature and the Department's decision not to challenge *Mission . . . I* substantively in their petition for review[, . . . ] the enforcement burden rested on plaintiffs.  If they wanted to be reimbursed for monies wrongfully withheld or taken, they were burdened to make all appropriate allegations and pleadings for that to occur.  They did not do this in *Mission . . . I*."  (*Mission II*, *supra*, at p. *11.)

G.  Motion to Amend the 2005 Petition and the New Petition

Following *Mission II*, on November 18, 2011, the hospitals moved to amend the original 2005 petition in Sacramento Superior Court to allege a request for reimbursement.  On the same day that the motion for leave to amend was filed, the

6

hospitals filed a new petition in Sacramento Superior Court (*Mission III*),[5] mirroring the 2005 petition, but expressly praying for reimbursement in a manner similar to their proposed amended petition. The Sacramento Superior Court denied the motion to amend the 2005 petition on the grounds that the pleading was substantively identical to the newly-filed *Mission III* petition. The hospitals did not appeal that ruling.

In April 2013, the Department and some of the hospitals settled[6] the original 2005 petition. Later, the hospitals filed a notice of dismissal of the *Mission III* petition without prejudice.

H. Dismissal of Administrative Appeal

After *Mission II*, the Department filed motions to dismiss the various administrative appeals.

The ALJs granted the Department's motions.

1. *Mee*

Regarding Mee, the ALJ found that "The issue raised in this tribunal is identical to the issue litigated in the Sacramento Superior Court and the Third District Court of Appeals; i.e., the validity of the rate freeze mandated by section 32 of S.B. 1103, the implementation of which limited the amount of [Mee's] Medi-Cal reimbursement for fiscal year 2004-05. In both its civil and administrative actions, [Mee] alleges that section 32 violates Sections (13)(A) and (30)(A), California's Medicaid State Plan, and

---

[5] *Mission I*, *Mission II*, and *Mission III* are referred to collectively as the *Mission* litigation.

[6] It appears that two of the hospitals in these appeals, Dignity Health and Hi-Desert were parties to the settlement. We are not told the terms of this settlement. But, according to the judgment entered pursuant to the stipulation for entry of judgment granting petition for writ of mandate entered by the parties: (1) Judgment entered and a writ was issued enjoining the Department "from utilizing the SB 1103 reimbursement freeze in its calculations of the Petitioner Hospitals' respective Medi-Cal reimbursement rates for the State Fiscal Year 2004-2005", and (2) the revised writ of mandate issued on June 19, 2009 (the one issued after remand of *Mission I* and was later appealed by the Department), was deemed void in light of *Mission II*.

7

the due process and impairment of contract clauses of action of the United States and California Constitutions. [Mee] acknowledges the fact that the issues are the same in its June 27, 2006, [Statement of Disputed Issues] wherein it states that the [*Mission* litigation] 'addresses the same issue that is raised in this administrative appeal.' [Mee] requested the [administrative] appeal be put in abeyance because the issues were the same. In both actions, [Mee] seeks redress for harm resulting from the enactment and implementation of section 32 of S.B. 1103. Accordingly, this tribunal finds that [Mee's] civil and administrative actions arise out of the same primary right." (Fn. omitted.)

The ALJ then cited *Mission II* and found that Mee "was obligated to seek all relief from its claim that section 32 is invalid in the prior litigation. [Mee] failed to do so." In so ruling, the ALJ expressly noted the Hospital's acknowledgement that it sought monetary relief in that tribunal because it failed to ask for such relief in the superior court. In sum: "As outlined by the Third District Court of Appeals, the [petitioners] were permitted to seek retroactive monetary relief from S.B. 1103 through their writ petition, but failed to request said relief. Under the doctrine of res judicata [claim preclusion], it cannot seek this relief in this forum. Res judicata bars this action."

### 2. *Dignity Health*

Regarding Dignity Health, the ALJ found that "the order [Dignity Health sought] ask[ed] for the same, or substantially the same, retroactive relief that [Dignity Health] was unable to obtain in *Mission I*. The petitioners in *Mission I* did not ask for retroactive relief; they requested only prospective declaratory and mandamus relief. Based on both the published and unpublished Court of Appeal decisions in *Mission I* and the doctrine of res judicata," the ALJ did not have the authority to grant the relief requested. After summarizing the primary rights theory and the doctrine against claim splitting, the ALJ determined: "Because both suits [the *Mission* litigation and the administrative action] challenge the same action by the State and involve the same harm to [Dignity Health], both implicate the same primary right and constitute the same cause of action under California law."

8

The ALJ continued: "While conceding that the doctrine of res judicata bars relitigation of issues that were previously decided in other proceedings involving the same parties, [Dignity Health] points out that . . . *Mission I* merely held that the petitioners in *Mission I* had not requested retrospective relief and '[t]hat is a far cry from a broad ruling that [they] . . . are not entitled to retrospective relief under any circumstances, whether in court or through statutorily authorized administrative proceedings.' [Citation.]  However, as noted, res judicata applies not only to all matters actually raised in the first suit but also all matters which could have been raised.  Indeed, the very essence of improper claim splitting is asking for relief, or asserting grounds, in a second action that should have been brought in an earlier proceeding.  A litigant may not pursue a remedy in one lawsuit and another remedy for the same wrong in a second action.  [Citation.]"

The ALJ concluded: "The Court of Appeal's May 2011 unpublished decision makes clear that petitioners in *Mission I* could have asserted a claim for monetary relief in that action.  They did not do so.  Consequently, [Dignity Health's] request for an order of retroactive monetary relief in this proceeding is barred by, or merged in, *Mission I*." (Fns. omitted.)

Later, in May 2013, the ALJ considered the Hospital's challenge to the method in which SB 1103 was applied to it.[7]  After consideration of the briefs, the ALJ was unconvinced.  It thus dismissed the Hospital's administrative appeal in its entirety, reasoning, inter alia, that the Department's instructions in how to apply the SB 1103 reimbursement limitation were reasonable.

---

[7]    According to the ALJ's May 2013 order, in "late February 2013, approximately two months after the December 2012 Order [granting the motion to dismiss on res judicata grounds] was issued [Dignity Health], for the first time, clarified its position as to" the methodology issue.  Now, Dignity Health was asserting that under SB 1103, "the limitation on payment for non-contracted hospitals may be based on 2003 costs only if the hospital was a non-contract hospital in 2003."  Because Dignity Health had previously been under contract in 2003, SB 1103 did not apply to it.

### 3. *Hi-Desert*

The ALJ granted the Department's motion to dismiss Hi-Desert's appeal on various grounds. Regarding res judicata, the ALJ noted that Hi-Desert "made no argument in opposition." On the merits, all elements of res judicata had been satisfied. Specifically, "the issue raised in this tribunal is identical to the issue litigated in the superior court, i.e., the validity of the rate freeze mandated by section 32 of S.B. 1103, the implementation of which limited [Hi-Desert's] Medi-Cal reimbursement for fiscal year 2004-05. . . . [Hi-Desert] acknowledges this in its October 24, 2007 [Statement of Disputed Issues], and it was the basis for [Hi-Desert's] request that the matter be placed in abeyance. In both actions, [Hi-Desert] seeks redress for harm resulting from the law's enactment and implementation. Accordingly, this tribunal finds that [Hi-Desert's] civil and administrative actions arise out of the same issue or cause of action."

### 4. *Modoc*

In the motion to dismiss Modoc's appeal, the Department argued that the Office of Administrative Hearings and Appeals lacked jurisdiction over the issues raised in the administrative appeal. Specifically: (1) the ALJ is prohibited by the California Constitution from declaring a law invalid, illegal, or unconstitutional; and (2) the issues raised in the Hospital's appeal were not "audit adjustments"; rather, they were mandatory payment reductions. Thus, "without any 'audit adjustment' being placed at issue in this audit appeal, the administrative law judge is without jurisdiction to fashion the remedy sought by [Modoc]."

Despite being given ample notice and opportunity, Modoc never filed an opposition to the Department's motion to dismiss.

Ultimately, the ALJ issued an order granting the Department's motion to dismiss, finding that "tribunal lacks jurisdiction to grant the relief requested by [Modoc]."

### I. Dignity Health's Request to Amend the Audit Report

In February 2013, while both its administrative appeal and the *Mission* litigation were pending, Dignity Health requested that the Department amend its 2007 audit report

10

and recalculate the 2005 fiscal period without applying SB 1103. The Department denied this request.

*Procedural Background*

In 2013, the hospitals timely filed petitions for writ of mandate pursuant to section 1094.5, seeking an order reversing the decision dismissing their administrative appeals, and pursuant to section 1085, declaring that the Director of the Department abused his discretion by declining to issue an amended audit report for the fiscal period at issue that calculated the hospitals' reimbursement without application of the SB 1103 limit.

The hospitals filed a motion in support of their requests for a writ of mandate.

A. Judge Chalfant's Order

The trial court (Hon. James C. Chalfant) determined that the ALJ erred in finding that Mee's request was barred by the doctrine of res judicata. According to the trial court, the issue was "whether the reimbursement relief was within the scope of [Mee's] primary right and should have been raised in the *Mission* litigation." The answer to that question is yes "only if damages could have been pled and proved in the *Mission* litigation. . . . If [Mee] could not have obtained damages in [the] *Mission* [litigation], then they were not within the scope of that litigation and *res judicata* does not apply."

The trial court went on to consider *Mission II*: "Although *Mission II* touched on the issue of mandamus damages, it did not conclude that damages were available to the *Mission* Petitioners. Rather, the *Mission II* decision concluded that damages generally are available in mandamus, but the *Mission* Petitioners did not allege and prove damages. Consequently, damages were not within the scope of the Court of Appeals' writ to the trial court, which lacked authority to award them."

The trial court framed the issue as follows: "[T]he issue of whether [Mee] could have pled and proved damages in the *Mission* litigation turns on whether the Department could exercise discretion in awarding them or they necessarily follow from its breach of ministerial duty." The trial court believed that various provisions of Welfare and Institutions Code section 14171 "demonstrate that [Mee] has a statutory right to an administrative appeal from a Department decision." "The Director was required to apply

11

his special expertise to [Mee's] administrative appeal before a decision on damages would be ripe for judicial review.  [Mee] did not exhaust its administrative remedies before the *Mission* litigation; it was pending.  If [Mee] failed to permit the Director to exercise his or her discretion in the administrative appeal on the damages issue, and instead sought damages in *Mission*, the Department could have demurred for failure to exhaust administrative remedies.  [Citation.]  Because [Mee's] damages remedy could not properly have been raised, it was not within the scope of the *Mission* litigation."

In sum, "[d]amages were not within the scope of the *Mission* Petitioners' traditional mandamus claim because they were subject to statutory administrative mandamus, and a jurisdictional defense of failure to exhaust administrative remedies. [Mee's] claim for reimbursement damages is not barred by *res judicata*.  The Department did not proceed in the manner required by law in dismissing [Mee's] administrative appeal, and the Petition is granted."

Judgment was entered, and this timely appeal by the Department ensued.

B.  <u>Judge Lavin's Orders</u>

1. *Dignity Health*

The trial court (Hon. Luis A. Lavin) agreed with the ALJ's determination that the administrative appeal was barred by the doctrine of res judicata.  As the trial court noted, it was undisputed that the *Mission* litigation and the instant litigation involved the same parties; the decisions in *Mission I* and *Mission II* were on the merits and final; and the *Mission* "litigation and this lawsuit involve the same primary right.  In fact, when it initiated the underlying administrative appeal, [the Hospital] admitted that the issue raised below was the same issue sought to be resolved in the *Mission* litigation. . . .  This admission is fatal."

In so ruling, the trial court rejected Dignity Health's contention that it could pursue this lawsuit because it was seeking a different remedy than that sought in the *Mission* litigation.  The trial court stated:  "[W]hile [Dignity Health] may not have been aware of the extent of SB 1103's monetary impact, the initial petition anticipated the Department's application of the rate freeze would cause monetary damage, as the petition

12

alleges '[a]ll petitioner hospitals will be affected by this reimbursement freeze, with some expecting losses of $1 million or more as a result of the reimbursement freeze.' . . . Thus, [Dignity Health], along with the other petitioning hospitals, was aware of the potential for the injury sought to be recovered in the instant action at the time the *Mission* litigation was initiated."

The trial court also took note of Dignity Health's litigation strategy: "Furthermore, in *Mission II*, [Dignity Health] actually argued that it was entitled to retrospective monetary relief. As stated by the Court of Appeal: 'If [Dignity Health] wanted to be reimbursed for monies wrongfully withheld or taken, they were burdened to make all appropriate allegations and pleadings for that to occur. They did not do this in [*Mission I*].' . . . The fact that [Dignity Health's] subsequent attempt to amend its pleading in the underlying *Mission I* trial court proceeding to include a request for monetary relief to address the *Mission II* decision was not successful does not entitle it to seek the same relief in a new lawsuit. To hold otherwise would allow an unsuccessful party to keep filing separate lawsuits until it obtains a desired outcome. [Citation.] Put another way, [Dignity Health] may not collaterally challenge the trial court's denial of its request to amend the pleading in *Mission I* by filing this action."

The trial court also rejected Dignity Health's reliance upon *Daugherty v. Board of Trustees* (1952) 111 Cal.App.2d 519 (*Daugherty*). And, it found Dignity Health's equitable arguments "unavailing."

Finally, the trial court found that Dignity Health failed to demonstrate that the Department "abused its discretion in refusing to issue an amended audit report for the 2004-2005 fiscal year."

### 2. *Hi-Desert*

The trial court's order denying Hi-Desert's petition for writ of mandate is nearly identical to the one filed regarding Dignity Health's petition. Notably, the trial court rejected Hi-Desert's reliance upon *Mata v. City of Los Angeles* (1993) 20 Cal.App.4th 141 (*Mata*) "and other authorities for the proposition that a judgment in a mandamus

13

proceeding cannot have a res judicata effect because a mandamus proceeding is a special proceeding rather than an ordinary action."

### 3. *Modoc*

The trial court's order denying Modoc's petition for writ of mandate closely mirrors the ones filed regarding Dignity Health and Hi-Desert's petitions. Importantly, the trial court found that Modoc failed to oppose the Department's motion to dismiss that was brought before the ALJ. "As a result, [Modoc] did not raise any of its challenges to the merits of the Department's motion or its contentions that the Department misinterpreted the nature of the issues raised in [Modoc's] administrative appeal. [Modoc] has offered no explanation for why it failed to oppose the Department's motion below and it has made no showing that filing an opposition to the Department's motion would have been futile or would otherwise be excused under a recognized exception to the exhaustion doctrine."

Further, it found that the "'legal question' exception" did not apply.

Even though the trial court determined that Modoc had forfeited various arguments, it reached the merits and found that Modoc was not entitled to the requested relief, namely retroactive application of *Mission I*.

### 4. *Judgment and Appeal*

Judgment was entered in favor of the Department in all three cases, and these timely appeals by Hi-Desert, Modoc, and Dignity Health ensued.

## DISCUSSION

### I. *Standard of Review*

"When reviewing the denial of a petition for writ of administrative mandate under Code of Civil Procedure section 1094.5, we ask whether the public agency committed a prejudicial abuse of discretion. 'Abuse of discretion is established if the [public agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.' [Citations.]" (*County of Kern v. State Dept. of Health Care Services* (2009) 180 Cal.App.4th 1504, 1510.) Like the trial court, our task is to determine whether the Department's decision is supported by

14

substantial evidence. (*Pacific Coast Medical Enterprises v. Department of Benefit Payments* (1983) 140 Cal.App.3d 197, 208–209.)

"As to questions of law, appellate courts perform essentially the same function as trial courts in an administrative mandate proceeding, and the trial court's conclusions of law are reviewed de novo. [Citation.]" (*Jenron Corp. v. Department of Social Services* (1997) 54 Cal.App.4th 1429, 1434.)

Additionally, as the Department and Dignity Health agree, "[i]n traditional mandamus actions, the agency's action must be upheld upon review unless it constitutes an abuse of discretion. [Citation.] 'When reviewing the exercise of discretion, "[t]he scope of review is limited, out of deference to the agency's authority and presumed expertise: 'The court may not reweigh the evidence or substitute its judgment for that of the agency. [Citation.]'" [Citation.] "In general . . . the inquiry is limited to whether the decision was arbitrary, capricious, or entirely lacking in evidentiary support . . . ." [Citation.] When making that inquiry, the ""court must ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute." [Citation.]'" [Citation.]' [Citation.]" (*O.W.L. Foundation v. City of Rohnert Park* (2008) 168 Cal.App.4th 568, 585–586.)[8]

II. *Because Modoc Failed to Oppose the Department's Motion to Dismiss, It Forfeited Its Right to Judicial Review*

The Department served Modoc with its motion to dismiss. Thereafter, the ALJ gave Modoc ample opportunity to oppose it. Nevertheless, at no time did Modoc respond to the Department's motion. It has also never offered an explanation for why it failed to file an opposition to the Department's motion. Whether characterized as a failure to exhaust administrative remedies (*Niles Freeman Equipment v. Joseph* (2008) 161 Cal.App.4th 765, 787–788) or traditional forfeiture (see, e.g., *Dietz v. Meisenheimer &*

---

[8] This standard of review comes into play only when we consider an issue raised by Dignity Health, *infra*.

*Herron* (2009) 177 Cal.App.4th 771, 798–800), the appellate record establishes that Modoc abandoned its administrative proceedings.  Because Modoc cannot advance arguments that it failed to raise in the administrative action below, the trial court properly denied Modoc's request for a writ of mandate.

Modoc argues that the ALJ lacked the authority to dismiss its administrative appeal.  But, Modoc fails to offer any legal authority to support this contention.  (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)  And, as the trial court correctly recognized, an agency is presumed to have regularly performed its official duties, and Modoc had the burden of establishing that the ALJ prejudicially erred against it.  (Evid. Code, § 664; *Alford v. Pierno* (1972) 27 Cal.App.3d 682, 691.)  Modoc had the burden to establish that the ALJ lacked the authority to dismiss the administrative proceeding, and it did not meet this burden.

III. *Dignity Health, Hi-Desert, and Mee's Administrative Actions are Barred by the Doctrine of Res Judicata*

The critical question presented in these appeals is whether the administrative actions are barred by the doctrine of res judicata.  The answer is yes.[9]  As recognized in *Mission II*, the hospitals could have sought monetary damages in their original *Mission I* petition.  They did not do so.  Pursuant to the doctrine of res judicata and related policy considerations, they cannot do so now.

"'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. . . .  [Citation.] Under the doctrine of res judicata, . . . a judgment for the defendant serves as a bar to further litigation of the same cause of action." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896–897, fn. omitted (*Mycogen*).)  "To operate as a bar[,] a judgment must be final, on the same claim or cause of action, between the same parties, and must

---

[9]  In light of our holding that the hospitals' claims are barred by res judicata, we do not address the issue of forfeiture that was raised in connection with Hi-Desert's appeal.

16

be an adjudication on the merits." (*McKinney v. County of Santa Clara* (1980) 110 Cal.App.3d 787, 794.)

Here, all the elements of res judicata are met:

A.  Same Parties

The same parties are involved in the instant case as in the *Mission* litigation.[10]

B.  Final Judgment on the Merits

*Mission I* and *Mission II* resulted in final judgments on the merits.

In its opening brief, Dignity Health asserts that there has never been a final judgment on the merits of the relevant issue.  According to Dignity Health, "the court in *Mission II* concluded that the complaint in that case[] did not tender the issue of retroactive relief, so that the judgment in that case[] *may* not be conclusive on this issue. [Citation.]  [¶]  Further, a decision by a court that it did not have jurisdiction to reach a particular issue is not considered a determination 'on the merits' for *res judicata* purposes." (Italics added.)  While the *Mission II* court stated that "the trial court lacked jurisdiction in this instance to enforce the writ of mandate," we do not believe that the *Mission II* court intended to hold that the trial court lacked the power or authority to hear the case. (*Mission II*, *supra*, 2011 Cal.App. Lexis 4036, at p. *11.)  Rather, *Mission II* held that the trial court could not grant monetary relief because the petitioners failed to meet their burden of placing the issue of reimbursement in front of the court.  In other words, the use of the word "jurisdiction" does not reflect the trial court's power to render judgment in the action.  (See, e.g., 2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 1, pp. 575–576.)  For this reason, *Robinson v. Superior Court* (1950) 35 Cal.2d 379, 383, 385 [holding that a dismissal of a proceeding or a denial of relief on the sole ground

---

[10]     As set forth above, Modoc was not a party to the *Mission* litigation.  Potentially, its claims in this action are barred by the doctrine of collateral estoppel, as it may have been in privity with the hospitals in the *Mission* litigation.  (*Lynch v. Glass* (1975) 44 Cal.App.3d 943, 948.)  After all, Modoc requested a stay of its administrative action because the result in the *Mission* litigation would "impact" its case.  And, Modoc is represented by the same attorney as Hi-Desert and Mee.

of lack of jurisdiction is not a decision on the merits] and *Maddern v. Superior Court* (1972) 22 Cal.App.3d 998, 1004–1005 [reiterating that a determination that the court has no jurisdiction to act is not a decision on the merits] are distinguishable. In those cases, the courts recognized that dismissing a case solely for lack of jurisdiction does not amount to a decision on the merits for res judicata purposes; as set forth above, that is not what occurred here.

### C. Same Claim

Both the *Mission* litigation and the instant case revolve around the same claim.

"Claim preclusion and res judicata apply to a pending proceeding only when a prior adjudication resolved, or could have resolved, the same cause of action pending in the current proceeding. [Citation.]" (*Fujifilm Corp. v. Yang* (2014) 223 Cal.App.4th 326, 331 (*Fujifilm*).) "'In California[,] the phrase "cause of action" is often used indiscriminately . . . to mean *counts* which state [according to different legal theories] the same cause of action . . . .' [Citation.] But for purposes of applying the doctrine of res judicata, the phrase 'cause of action' has a more precise meaning: The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798 (*Boeken*).) "Causes of action are considered the same if based on the same primary right." (*Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 325.) "'[T]he primary right is simply the plaintiff's right to be free from the particular injury suffered.'" (*Mycogen*, *supra*, 28 Cal.4th at p. 904.) "Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Boeken*, *supra*, at p. 798.)

*Boeken*, *supra*, 48 Cal.4th 788 is instructive. In that case, the plaintiff brought a loss of consortium action against a cigarette manufacturer after her husband was diagnosed with lung cancer. She sought compensation for the loss of her husband's companionship and affection. (*Id.* at pp. 792–793.) About four months after filing that action, she dismissed it with prejudice. (*Id.* at p. 793.)

18

A year after the dismissal of her loss of consortium action, the plaintiff's husband died from the effects of lung cancer. She then filed a wrongful death action against the cigarette manufacturer, again seeking compensation for the loss of her husband's companionship. (*Boeken*, *supra*, 48 Cal.4th at p. 793.) The cigarette manufacturer demurred on the grounds that the plaintiff's claim was barred by the doctrine of res judicata; the trial court sustained the demurrer without leave to amend, and the Court of Appeal affirmed. (*Ibid*.)

Applying the primary rights theory, the Supreme Court affirmed the judgment of the Court of Appeal. (*Boeken*, *supra*, 48 Cal.4th at pp. 798–799.) The Supreme Court reasoned that the primary right at issue in both actions, namely "the right not to be permanently and wrongfully deprived of spousal companionship and affection," was the same. (*Id*. at p. 804.)

The same holds true in this appeal. The hospitals' actions here were based upon the same primary right, namely SB 1103's alleged deprivation of a higher level of Medi-Cal reimbursements to noncontract hospitals. Granted, the hospitals sought a different remedy in *Mission I* (declaratory and injunctive relief) as opposed to what they later sought, but that was their litigation choice. The same primary right is at stake in both cases.

For this reason, Dignity Health's reliance upon *Fujifilm*, *supra*, 223 Cal.App.4th 326 is misplaced. In *Fujifilm*, the Court of Appeal determined that a plaintiff's second lawsuit was not barred by res judicata because the claims at issue in the two actions— breach of contract and fraudulent transfer (characterized by the court as "tortious conduct that renders uncollectable a judgment arising from the breach of contract")—were not based upon the same primary rights. (*Fujifilm*, *supra*, at p. 332.) In contrast, the hospitals' claim in both the *Mission* litigation and the instant litigation is based upon the same primary right—the harm they allegedly suffered as a result of the Legislature's enactment, and the Department's enforcement, of SB 1103.

In this vein, the hospitals assert that separate wrongs are at stake; they contend that the <u>enactment</u> of SB 1103 is distinct from the <u>application</u> of that legislation. In other

19

words, according to the hospitals, the *Mission* litigation considered the petitioners' collective right to challenge legislation whereas the issue in the underlying administrative appeal is the hospitals' right to money. Because separate wrongs are at issue, res judicata does not apply. Again, while styled differently, the hospitals are making the same challenge, namely that they were (or would be) deprived of financial reimbursements as a result of SB 1103. The fact that the hospitals may be pursuing or adding a different remedy for the same injury does not create a new primary right. (*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 576 (*Villacres*).) The petitioners knew when they filed their original petition for writ of mandate in *Mission I* that they would lose monies under SB 1103; after all, that is why they sought to invalidate the law. The amount of monies that they would be denied was irrelevant.

It follows that the hospitals' administrative claim merged into the *Mission* litigation. (See *Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 975, 977 ["by prosecuting the superior court action to final judgment before the Board action was final, [the plaintiff] allowed her cause of action to merge in that judgment," regardless of whether the superior court judgment is based upon an erroneous conclusion].) Once the courts in the *Mission* litigation invalidated SB 1103 and then determined that the hospitals were not entitled to financial reimbursement because they never requested those monies, there was nothing left for the ALJs to decide, regardless of whether the administrative appeal was the exclusive vehicle for challenging an audit finding (Welf. & Inst. Code, § 14104.5). Just as the hospitals may not collaterally challenge *Mission II* in this court,[11] they also could not do so in the administrative proceedings.

Implicit in at least Mee's briefs is the presumption that because the claims are different, we should conclude that the administrative appeal was left intact as the only

---

[11] This litigation proceeded, for years, in Sacramento. It seems that as a result of their lack of success in Sacramento, the hospitals elected to file the instant litigation in Los Angeles. We express no opinion on the propriety of the Court of Appeal's decision in *Mission II*; we only hold that pursuant to the doctrine of res judicata, the parties are bound by it.

20

appropriate vehicle for it (and the other hospitals) to recoup its monies improperly withheld as a result of the Department's application of SB 1103.

Mee's understanding of the procedure is correct: Once each hospital received its audit report from the Department, it correctly filed an administrative appeal pursuant to Welfare and Institutions Code section 14171; it then properly requested a stay while it filed an action in a court of law to determine the validity of SB 1103. But after their victory in *Mission I*, the hospitals' litigation strategies went astray. Once they prevailed in *Mission I*, the hospitals should have returned to the ALJs and asked that their administrative appeals recommence in light of the holding in *Mission I*. Then, if they did not obtain the monetary relief that they believed they were entitled to, they could have filed a petition for writ of mandate challenging each ALJ's decision.

Instead of adhering to this procedure, the hospitals chose to allow their administrative claims to languish while they sought to obtain relief in a court of law. For years, the hospitals litigated their right to monetary relief, whether characterized as damages or otherwise, in court—they filed a petition for a writ of mandate, seeking to enjoin the Department from using SB 1103 in its calculations for the fiscal year 2004-2005. They opposed the Department's appeal from the trial court's order. (*Mission II*, *supra*, 2011 Cal.App. Lexis 4036, at pp. *7–*8.) Following the unfavorable decision in *Mission II*, they filed a motion for leave to amend their original writ petition. They also filed a new lawsuit (*Mission III*), with allegations that mirrored those in the original writ petition but now adding a request for financial reimbursement. After all of those litigation tactics proved unsuccessful, the hospitals tried something new: They filed new petitions for writ of mandate in a new trial court in a new venue.

The bottom line is that the same claim is at stake—the hospitals' alleged deprivation of reimbursement as a result of the enactment and application of SB 1103.[12]

---

[12] The cases cited by the hospitals do not compel a different result. These cases arise in distinguishable factual contexts (*Daugherty*, *supra*, 111Cal.App.2d 519 [employment]; *Henderson v. Newport-Mesa Unified School Dist.* (2013) 214 Cal.App.4th 478 [employment]; *Craig v. County of Los Angeles* (1990) 221 Cal.App.3d 1294

21

They are bound by their choice to request (albeit belatedly) financial reimbursement in a court of law as opposed to in an administrative proceeding.[13] And, they cannot collaterally challenge the unfavorable rulings in the *Mission* litigation by reopening their administrative action at this stage of the proceedings.

To the extent the hospitals suggest that they could not have requested financial reimbursement when they filed *Mission I*, we disagree.[14] (See *Warner v. North Orange County Community College Dist.* (1979) 99 Cal.App.3d 617, 628 ["Damages may appropriately be awarded in mandamus proceedings"].) The hospitals' claim against the Director accrued when SB 1103's reimbursement freeze went into effect, which was

---

[employment]; *Hensler v. City of Glendale* (1994) 8 Cal.4th 1 [inverse condemnation]; and *Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4h 761, 779 [inverse condemnation case that "identified an exception to the general rule against splitting cases"]). And, in none of those cases was there an intervening Court of Appeal decision resolving the primary right at stake, like we have in this case (*Mission II*).

[13] For these reasons, among others, *Mata*, *supra*, 20 Cal.App.4th 141 is distinguishable. In that case, the petitioner sought compensatory damages at the same time as when he requested administrative mandate. (*Id*. at pp. 143, 147–148.) Also, unlike the plaintiff in *Mata*, Mee expressly put its administrative action in abeyance so that it could complete its litigation in a court of general jurisdiction.

[14] Mee cites cases in support of the proposition that monetary relief was not available in the original writ petition. But, those cases cited concern whether mandamus is an appropriate remedy for enforcing a contractual obligation against a public entity. (See *Wenzler v. Municipal Court* (1965) 235 Cal.App.2d 128, 132; *300 DeHaro Street Investors v. Department of Housing & Community Development* (2008) 161 Cal.App.4th 1240, 1254.) That is not the issue in the instant appeal. Hi-Desert offers those same cases to support the suggestion that because mandamus is a "special proceeding" and not an appropriate vehicle to recover monetary relief, the doctrine of res judicata does not bar it from bringing a second action to recover money following the writ proceeding. (*Wenzler v. Municipal Court, supra,* at p. 32; see also *Mata*, *supra*, 20 Cal.App.4th at p. 149.) As noted in *Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1205, there is no explanation as to "why a decision in a prior mandamus proceeding should not be res judicata if the requirements for the doctrine are satisfied."

22

immediately upon its August 2004 enactment. At that point, the hospitals knew that if SB 1103 were enforced, then they would not be entitled to certain financial reimbursements. In fact, the hospitals so admitted when they filed their petition for writ of mandate in *Mission I*, alleging that they would "be affected by this reimbursement freeze, with some expecting losses of $1 million or more as a result of the reimbursement freeze." While the amount may not have been set at that point,[15] the hospitals knew that they were going to be financially impacted and they should have pled a request for monetary relief if that is what they wanted. (*Mycogen*, *supra*, 28 Cal.4th at pp. 907–908.)

D. No Exception to Res Judicata/Equity and Public Interest

Hi-Desert argues that judicial and/or equitable estoppel bar the Department from relying upon the doctrine of res judicata. However, Hi-Desert has not shown that the elements of each of these doctrines has been satisfied. Regarding judicial estoppel, it did not establish how the Department has taken "totally inconsistent" positions and how the Department was successful in asserting the first position. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.) As for equitable estoppel, Hi-Desert did not demonstrate either how the Department changed positions or how it detrimentally relied upon that alleged change in position. (*Ibid*.)

Dignity Health also advances some sort of argument based upon estoppel. It posits: The Department argued in the *Mission* litigation that Dignity Health could not obtain retroactive relief because such relief was barred by sovereign immunity. If that was Department's position, then it cannot be heard to complain that Dignity Health is trying to recoup those monies through an administrative appeal. But, Dignity Health

---

[15] During oral argument, counsel for the hospitals focused on the argument that they could not request monetary relief in their original writ petition because the amount of damages had not yet been set. In other words, disgorgement was not possible to request because there was nothing yet to disgorge. We note that the hospitals received their audit reports before *Mission I* was issued. They do not explain why they did not at least attempt to amend their original writ petition to include a claim for disgorgement if that is what they believed they needed to do.

23

offers no legal authority to support this contention. (*Benach v. County of Los Angeles*, *supra*, 149 Cal.App.4th at p. 852.) And, regardless of whether this may have been the Department's position, it was never adopted by the courts. Thus, *People v. Damon* (1996) 51 Cal.App.4th 958, 974 and *Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1170–1174 do not compel reversal.

Alternately, Dignity Health contends that it was "likely" required to pursue an administrative remedy to completion before seeking monies in a court action "because the Hospital's potential 'damage' remedy could not have been raised in the *Mission* litigation." In other words, Dignity Health seems to be suggesting that the doctrine of res judicata cannot apply because it had to fully exhaust its administrative remedy. As previously noted, there is no legal authority to support Dignity Health's supposition that its potential damage remedy could not have been raised in the *Mission* litigation.[16] (See *Takahashi v. Board of Education* (1988) 202 Cal.App.3d 1464, 1478–1481.)

Finally, the hospitals argue that equity and public interest weigh against the application of res judicata in these cases. After all, as explicitly recognized in *Mission II*, allowing res judicata to bar the hospitals' claim would ensure that the state face no consequence for its violation of law. (See *Mission II*, *supra*, 2011 Cal.App. Lexis 4036, at p. *11.)

Equitable concerns weigh in this case. It is true that the hospitals cannot recoup financial reimbursements that were imposed as a result of a law that was ultimately invalidated. But, in this case, the scales of equity tip both ways. This litigation has been pending for over 10 years and, "[a]t some point litigation must come to an end. That point has now been reached." (*Facebook, Inc. v. Pac. Northwest Software, Inc.* (9th Cir. 2011) 640 F.3d 1034, 1042.) The hospitals did not request monetary relief when they filed their original petition, when they could have. Under these circumstances, it would be inequitable and a waste of judicial resources to allow this litigation to proceed.

---

[16] *Mission II* expressly held otherwise. (*Mission II*, *supra*, 2011 Cal.App. Lexis 4036, at p. *11.)

(*Wulfien v. Dolton* (1944) 24 Cal.2d 891, 894–895; *Villacres*, *supra*, 189 Cal.App.4th 592.)

IV. *Dignity Health's Challenge to Methodology*

Dignity Health argues that the Director applied the reimbursement limit of SB 1103 in an unreasonable manner. Specifically, it asserts that because it was a "'contracted' hospital during the 2003 base period identified in SB 1103, the Department erred in using the facility's 2003 Medi-Cal costs as a basis for limiting its reimbursement in 2004-2005—a period during which [Dignity Health] was a 'non-contracted' facility."

This claim is barred by the doctrine of res judicata as well. Dignity Health contested SB 1103's methodology in its first petition for writ of mandate. Thus, the issue was actually litigated, or could have been litigated, to finality. Even if it were deemed not to have been actually litigated, Dignity Health's methodology challenge in this appeal amounts to an improper collateral attack on that claim. (See, e.g., *Miller v. Board of Medical Quality Assurance* (1987) 193 Cal.App.3d 1371, 1379 ["an administrative agency does not act without fundamental jurisdiction or in excess of its jurisdiction when it acts pursuant to the authority of a statute later declared unconstitutional"].)

For the sake of completeness, we reach the merits of this issue and conclude that there are no grounds to reverse the trial court judgment. "'"In determining the proper interpretation of a statute and the validity of an administrative regulation, the administrative agency's construction is entitled to great weight, and if there appears to be a reasonable basis for it, a court will not substitute its judgment for that of the administrative body." [Citations.] . . . [A]n administrative ruling "'comes before the court with a presumption of correctness and regularity, which places the burden of demonstrating invalidity upon the assailant []."' [Citations.]' [Citations.]" (*Family Planning Associates Medical Group, Inc. v. Belshé* (1998) 62 Cal.App.4th 999, 1004.)

25

The ALJ found that SB 1103 was passed because California faced "'a fiscal crisis that require[d] unprecedented measures to be taken to reduce General Fund expenditures.'" The ALJ explained that the legislative intent behind SB 1103 was to save money and therefore limit reimbursement to all hospitals, including Dignity Health, which was a noncontract hospital in 2004 but not in 2003. Because the Department's instructions in how to implement SB 1103 were "reasonable and consistent with the statute's purpose of saving money[,] it [was] entitled to deference."

The trial court agreed. It held that "[b]ecause SB 1103's express purpose [was] to reduce the expenditure of state funds through resort to unprecedented measures[, . . . the Department], which is charged with implementing Medi-Cal regulations and conducting Medi-Cal audits, correctly applied the rate freeze to [the Hospital]." (Fn. omitted.)

Dignity Health has failed to rebut the presumption of correctness of the Department's decision or the ALJ's decision or demonstrated that the trial court abused its discretion. Nothing in the legislative digest compels a different conclusion.

V. *Dignity Health's Request for an Amended Audit Report*

Finally, we consider whether the Department abused its discretion in refusing to issue Dignity Health an amended audit report for the 2004-2005 fiscal year. According to Dignity Health, the Director abused his discretion by effectively disregarding *Mission I*.

If the Department were required to consider *Mission I*, then it would also have to consider *Mission II*, which held that *Mission I* only granted prospective relief. (See *Mission I*, *supra*, 168 Cal.App.4th at p. 493 [enjoining the Department from utilizing SB 1103 in the future]; *Mission II*, *supra*, 2011 Cal.App. Lexis 4036, at pp. *9–*10.) Because *Mission I* only granted prospective relief, the Department did not abuse its discretion in refusing to amend its audit report.

26

## DISPOSITION

The judgment in favor of Mee is reversed.  The judgments in favor of the Department are affirmed.  The Department is entitled to costs on appeal.

**CERTIFIED FOR PUBLICATION.**


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT