Filed 2/26/25  SCA Pacific Holdings v. Sutter Health CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SCA PACIFIC HOLDINGS, INC., et al., | C097790 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34202200318465CUPAGDS) |
| v. | |
| SUTTER HEALTH, | |
| Defendant and Respondent. | |

Sutter Health (Sutter) launched several joint ventures with SCA Pacific Holdings, Inc., SCA Santa Rosa, Inc., and other SCA entities (collectively, SCA) involving ambulatory surgical care centers in different parts of California.  Operating agreements that Sutter and SCA signed for those joint ventures contemplated binding arbitration of disputes between them.  After Sutter obtained a favorable award in arbitration against SCA in 2022, the trial court granted Sutter's petition to confirm the award and denied SCA's petition to vacate it.  SCA appeals.

1

In a cross-appeal, Sutter contends the trial court erred by implicitly denying its objections to a declaration that SCA submitted in support of its petition to vacate the final award.

We affirm the trial court's ruling because we agree with Sutter that SCA's arguments are forfeited as they were not raised in the arbitration proceeding. We dismiss Sutter's cross-appeal as moot.

BACKGROUND[1]

Beginning in 2007, Sutter and various SCA entities launched joint ventures involving ambulatory surgical care centers in different parts of California. The parties' rights and responsibilities in connection with those joint ventures were reduced to writing in several operating agreements whose terms do not differ for our purposes (the agreement).

Sutter insisted early on that if an SCA entity were sold or came to be controlled by a non-SCA entity, it did not want to be forced to continue a joint venture with a new partner that it found unacceptable. With regard to this issue, the agreement provides: (a) neither party may "sell, assign, or otherwise transfer" its interest in a joint venture, "except as otherwise set forth" in the agreement (the "assignment provision"); (b) a change in the ownership of one party is "deemed an assignment" if it results in a non-SCA entity controlling the SCA entity or a non-Sutter entity controlling the Sutter entity (the "change in control provision");[2] (c) assignment of any portion of a party's interest in a joint venture that violates the assignment provision gives the other party the "right to

_____

[1] This background comes primarily from the arbitration panel's final award, which we take as correct. (See *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 367, fn. 1.)

[2] "Control" is defined as the power to direct management and policies, through ownership of voting securities, by contract, or otherwise.

2

purchase" the violating party's interest in the joint venture for 50 percent of its value (the "buyout provision").

Section 19 of the agreement concerns dispute resolution and binding arbitration between the parties. Section 19.14 provides: "The Arbitrator(s) shall have the power to grant all legal and equitable remedies available under California law, including but not limited to, preliminary and private injunctions, specific performance . . . and compensatory damages; provided, however that the Arbitrator(s) shall not be empowered to award punitive damages, penalties, forfeitures or attorneys' fees (except as sanctions, as specified herein). . . . The Final Award shall be conclusive and binding, and may be confirmed thereafter as a judgment by the Superior Court of the State of California, subject only to challenge on the grounds set forth in California Code of Civil Procedure 1281, et seq."

In 2017, SCA became an indirect wholly owned subsidiary of a health services corporation. This event troubled Sutter because it considered that corporation a significant competitor whose business practices it had reservations about and with whom it had recently been involved in litigation.

After the parties were unable to agree whether the acquisition of SCA triggered Sutter's "right to purchase" under the buyout provision, they went to arbitration. Relevant here, in addition to disputing that the buyout provision had been triggered, SCA asserted that the buyout provision constituted (1) an impermissible forfeiture under Civil Code section 3275[3] or (2) a penalty in violation of Civil Code section 1671,[4] and (3) that

---

[3] "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty." (Civ. Code, § 3275.)

[4] With certain exceptions, "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision

3

Civil Code section 1442 required an interpretation of the change in control provision that avoided triggering the buyout provision.[5]

After hearing testimony from multiple witnesses and considering the parties' filings, a panel of three arbitrators issued a "final award" in March 2022 that (1) rejected SCA's statutory arguments regarding the buyout provision and change in control provision, and (2) determined Sutter was entitled to (a) specific performance under the buyout provision, and (b) a judgment for all money distributions that SCA received from the joint ventures after its change in control.

Sutter filed a petition in the trial court to confirm the final award and SCA filed a petition to vacate it, arguing the arbitrators exceeded their powers under the agreement because (1) application of the buyout provision violated section 19.14's prohibition on punitive damages, penalties, forfeitures, and (2) the final award violated public policy against forfeiture and penalties, even if a particular Civil Code section did not apply. In the trial court, Sutter contended SCA had "waived" these two arguments by failing to raise them in the arbitration proceeding.[6] The trial court confirmed the final award in a November 2022 order, rejecting SCA's arguments on the merits and offering no comment on Sutter's forfeiture contention. SCA and Sutter appealed.

---

establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." (Civ. Code, § 1671, subd. (b).)

[5] "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." (Civ. Code, § 1442.)

[6] In its appellate briefing, Sutter continues to refer to SCA's failure to raise arguments in the arbitration proceeding as a "waiver." But our Supreme Court recently emphasized that the principle at issue here is properly understood as "forfeiture." (See *North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155, 178 [explaining that if party does not raise an argument in the required manner, that failure "constitutes a forfeiture, not a waiver," and "encourag[ing] courts and litigants to use precise terminology"].) Accordingly, we will discuss this issue as forfeiture, not waiver.

4

DISCUSSION

I

*SCA's Forfeited Arguments*

Sutter contends SCA forfeited the arguments it raises in this appeal by failing to raise them before the arbitrators. We agree, and decline to consider the arguments.

A. *Background Principles*

1. *Challenging an Arbitral Award in Court*

Because of the strong public policy in favor of arbitral finality, the scope of judicial review of an arbitral award is extremely narrow. And while an arbitrator's decision generally is not reviewable for errors of fact or law, section 1286.2 of the Code of Civil Procedure[7] provides limited exceptions to this general rule, including where arbitrators " 'exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.' (§ 1286.2, subd. (a)(4) . . . .)" (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33.)

Although section 1286.2 permits vacatur of an award that exceeds the arbitrator's powers, "the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers." Thus, "[t]he principle of arbitral finality [and] the practical demands of deciding on an appropriate remedy for breach . . . dictate that arbitrators, unless expressly restricted by the agreement or the submission to arbitration, have substantial discretion to determine the scope of their contractual authority to fashion remedies, and that judicial review of their awards must be correspondingly narrow and deferential." (*Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at pp. 372, 376.)

---

[7] Undesignated statutory references are to the Code of Civil Procedure.

5

### 2. *Forfeiture*

"In order to challenge an award in court, a litigant must have raised the point before the arbitrator." Otherwise, the contention is forfeited. (*Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 829.) This forfeiture rule exists to avoid wasting scarce dispute resolution resources, the arbitrators' time, and the parties' time. (*ECC Capital Corp. v. Manatt, Phelps & Phillips, LLP* (2017) 9 Cal.App.5th 885, 906; see *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 30 [an issue "would have been [forfeited] . . . had" a party "failed to raise it *before the arbitrator*"; "[a]ny other conclusion is inconsistent with the basic purpose of private arbitration, which is to finally decide a dispute between the parties"].)

A claim that an arbitral award should be vacated because the *entire* agreement (of which an agreement to arbitrate was a part) is illegal can be raised for the first time in a petition to vacate the award in the trial court because such a claim is not arbitrable. But a claim challenging the legality of a specific provision in a contract (that does not include the arbitration agreement) is arbitrable. (See *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 76-77.) Therefore, unless the entire agreement or the arbitration provision of an agreement is being challenged as illegal, a claim challenging an arbitral award, or a provision of a contract, is generally forfeited if not raised in the arbitration proceeding.

### B. *Analysis*

SCA contends the final award should be vacated because the arbitrators exceeded their powers (§ 1286.2, subd. (a)(4)) by (1) "awarding precisely the sort of forfeiture or penalty" that section 19.14 of the agreement precluded and (2) issuing an award that contravenes California public policy against forfeitures or penalties, even if no "particular statute specifically forbids it"

There is no dispute here that SCA could have, but did not, raise before the arbitrators the arguments it now raises here. Furthermore, SCA does not contend that its

6

arguments attack the legality of the entire agreement.  Accordingly, SCA's appellate claims are forfeited.

SCA contends we should nevertheless consider its forfeited arguments for three reasons:  (1) the trial court addressed the merits of those arguments, apparently concluding they were properly before it; (2) although the issues as framed in the arbitration "bore a different label," the question of whether a forced buyout of SCA's shares at half their value would constitute a forfeiture or penalty was arbitrated, making Sutter's contention little more than a technicality; and, (3) we should exercise our discretion to excuse the forfeiture because appellate courts are "normally inclined" to consider purely legal questions that have been forfeited, particularly when public policy considerations are implicated.  We are not persuaded.

First, even if SCA were correct that the trial court concluded the forfeited arguments were properly before it,[8] such a conclusion would not bind us.  (Cf. *Hi-Desert Medical Center v. Douglas* (2015) 239 Cal.App.4th 717, 720, 726, 729, 731 [affirming the trial court's ruling that denied a petition for writ of mandate on the merits by invoking "traditional forfeiture" principles and explaining the writ petitioner could not "advance arguments that it failed to raise in administrative action below," before it reached the trial court].)  We are disinclined to address a forfeited argument because doing so undermines the basic purpose of private arbitration:  speedy dispute resolution.  (See *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 924 ["arbitration's fundamental attributes" include "speed and efficiency"]; *Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at p. 30; *ECC Capital Corp. v. Manatt, Phelps & Phillips, LLP*, *supra*, 9 Cal.App.5th at p. 906.)

---

[8]  As we noted previously, the trial court did not address forfeiture in its ruling.

Second, we see the differences between the arguments SCA raised before the arbitrators and the arguments it raises now as more than a question of labels and technicalities. SCA's arguments before the arbitrators concerned discrete *statutory* challenges to enforcement of the buyout provision, whereas its arguments on appeal concern (1) the interplay of two (potentially conflicting) provisions of the *agreement itself* and (2) a "public policy" challenge to the arbitral award that relies at least in part on California *common law*. Precision regarding the source of a right invoked in a legal dispute helps to ensure the reasoned resolution of that dispute. (Cf. *Pollack v. Duff* (D.C. Cir. 2015) 793 F.3d 34, 39-40 ["Identifying the relevant source of [a] right . . . invoked in a particular case is essential because" courts have "developed different doctrines to analyze" those different sources].)

Finally, while we have discretion to consider forfeited arguments, such discretion should be exercised *rarely*, and only in cases presenting an important legal issue. (*In re H.D.* (2024) 99 Cal.App.5th 814, 817-818; *In re Marriage of Elali & Marchoud* (2022) 79 Cal.App.5th 668, 682.) We are not convinced that SCA's forfeited arguments present an important legal issue.

## II

### *Remaining Issues*

Because we have concluded SCA's arguments are forfeited, we do not address their merits. Our conclusion also makes it unnecessary to address Sutter's protective cross-appeal challenging the trial court's implicit denial of its objections to a declaration that SCA submitted in support of its petition to vacate the final award. We therefore dismiss that appeal as moot. (See *Jones & Matson v. Hall* (2007) 155 Cal.App.4th 1596, 1611 [protective cross-appeal dismissed as moot upon affirming the rulings appealed from because "only a party who is aggrieved may appeal from a judgment or appealable order"].)

8

DISPOSITION

The order granting the petition to confirm the arbitral award and denying the petition to vacate the award is affirmed.  Sutter's cross-appeal is dismissed as moot. Sutter is entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


                                            /s/
                                     BOULWARE EURIE, J.



We concur:



        /s/
MAURO, Acting P. J.



        /s/
RENNER, J.


9