Filed 10/9/25  Musighi v. Mossighi CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ISAAC MUSIGHI et al., | B340672 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. 23SMCV03134) |
| PARVIZ DANIEL MOSSIGHI, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark H. Epstein, Judge.  Affirmed.

Esensten Law, Robert L. Esensten and Randi R. Geffner for Plaintiffs and Appellants.

Saul Ewing, Curtis A. Graham and Dawn B. Eyerly for Defendant and Respondent.

\* \* \* \* \* \*

Two brothers dissolved their decades-long jewelry business with a series of arbitrations in 2016 and 2017 that distributed the business's inventory.  In 2020 and again in 2021, respectively, the brother unsatisfied with the arbitrations sought to compel a new arbitration and sued the other brother for improperly retaining some of the business's assets.  The 2020 lawsuit was dismissed by the trial court as barred by claim preclusion, and the 2021 lawsuit was voluntarily dismissed by the unsatisfied brother with prejudice.  The unsatisfied brother then filed the lawsuit at issue here in 2023, alleging that the other brother put some of the business's assets in a sealed box, promised only to open it upon demand, and refused to open it in 2022 despite a demand.  The trial court dismissed this latest lawsuit on demurrer as barred by claim preclusion.  This was correct, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

I.  **Facts**[1]

A.  ***Relationship between the parties***

Isaac Musighi (Isaac) and Parviz "Daniel" Mossighi (Daniel) are brothers.[2]  In the early 1980s, Isaac and Daniel

---

[1]    Consistent with the standard of review, we draw the facts from the operative pleading and the brothers' prior litigation history, which is properly subject to judicial notice.  We also draw the facts from our prior opinion in this matter.  (*Musighi v. Mossighi* (March 24, 2022, B310927) [nonpub. opn.].)

[2]    Because the brothers share the same last name (although they spell it differently), we will use first names for the sake of clarity.  We mean no disrespect.

2

formed a jewelry business called Pacific M. International (PMI). In 2013, they decided to part ways and dissolve PMI.

**B.** *Initial arbitration in December 2016 to dissolve PMI and distribute its assets*

The brothers agreed to arbitrate PMI's dissolution, and the arbitrators issued a "binding order" in November 2016. Following an auction in which Isaac outbid Daniel for ownership of PMI, the arbitrators ruled that (1) Isaac owed Daniel $9,018,291 (reflecting that, at the time, Isaac possessed more of PMI's inventory than Daniel), to be satisfied by Isaac's payment of $800,000 for ownership of PMI and with the remaining balance to be paid in installments, (2) Daniel must "cease use of the [PMI] name immediately," (3) each brother was to keep his own purchased inventory (except for a particular blue diamond), (4) the brothers would split the funds held in one specific bank account, and (5) each brother was to be allocated specific outstanding accounts receivables. Daniel was to vacate PMI's premises in February 2017.

**C.** *Creation and sealing of the "kashet" in February 2017*

On February 20, 2017, Daniel placed jewelry "removed" from PMI's safe as well as "additional jewelry" into a sealed container, which the parties call the "kashet." The items placed in the kashet were "valuable and precious stones, gold and designs," all belonging to PMI. Isaac and Daniel "orally agreed" that, upon demand, the kashet "would be opened jointly."

**D.** *Renewed arbitration in 2017*

The brothers agreed to reconvene the arbitration in early 2017 after signing a new agreement acknowledging that the further arbitration would be "binding" and that there would be

3

"no right to further review." After two hearings in April and May 2017, the arbitrators issued an "Amended Binding Order." The amended award reaffirmed that Isaac owed Daniel $9,018,291, but modified the schedule of installment payments and altered the disposition of the blue diamond.

The amended arbitration award did not explicitly mention the kashet.

### E.     *Confirmation of the amended arbitration award in October 2017*

In September 2017, Daniel petitioned the trial court to confirm the amended award. Isaac opposed the petition, and also moved to vacate the award. After further briefing and a hearing, the trial court in October 2017 entered a judgment confirming the amended award.

### F.     *Further lawsuits resulting in 2018 settlement agreement*

In December 2017, Isaac sued Daniel and PMI, alleging (1) a shareholder's derivative action on behalf of PMI, (2) breach of fiduciary duty, and (3) conversion. As to all three claims, Isaac alleged that Daniel had "taken possession of, and has refused to return, PMI's jewelry," and thus had been "embezzling and stealing inventory from PMI [and] converting [its] jewelry." Isaac alleged that Daniel had breached his fiduciary duty and committed the tort of conversion by "[c]onverting jewelry of PMI . . . owned by" Isaac.

Isaac's 2017 lawsuit made no mention of the kashet.

In response to Isaac's lawsuit, Daniel filed a creditor's suit against Isaac, Isaac's other businesses, and Isaac's wife and family; Daniel also filed an application for a turnover order directing Isaac to deliver the blue diamond.

4

After the trial court set a contempt hearing because Isaac had thwarted the turnover order the court had issued, the parties entered into a "binding" settlement agreement in 2018. Under that settlement agreement, Daniel agreed to accept $2 million less than awarded to him under the amended arbitration award, and both brothers agreed to dismiss all of their outstanding claims. The settlement agreement contained an arbitration clause.

### G. *Isaac's April 2020 petition to "set aside" the 2017 judgment confirming the amended arbitration award and to compel a new arbitration of "approximately 50 issues"*

In April 2020, Isaac filed a verified petition against Daniel and PMI seeking to set aside the prior 2017 judgment that confirmed the amended arbitration award, and to compel arbitration of "approximately 50 issues" pursuant to the arbitration clause in the brothers' 2018 settlement agreement.

In the petition, Isaac alleged that Daniel "had placed all of the jewelry" into the kashet,[3] alleged that Isaac "asked Dan[iel] to open the [kashet] . . . and provide [him] with a particular ring that he needed to prove PMI's case against" Customs officials, alleged that Daniel refused to open the kashet, and alleged that there remains "jewelry in Dan[iel]'s possession that needs to be divided between Dan[iel] and Isaac," including the jewelry in the kashet. Notwithstanding the prior arbitration awards that fixed what each brother owed the other based on the inventory of PMI assets in their possession, the petition alleged that "[n]o part of [PMI's] inventory" had been "divided" or "discussed."

---

[3] Although the petition refers to a "sealed box," the parties do not dispute on appeal that the box is the kashet at issue in this current litigation.

5

In January 2021, the trial court denied Isaac's petition, finding that it is "really just a motion for reconsideration of" the amended arbitration award because "[t]he parties [already] settled all issues related to the dissolution of PMI."

In March 2022, a panel in Division Two of this Court affirmed the denial of Isaac's petition in an unpublished opinion. Specifically, the court held that "nearly all of the issues that Isaac claim[ed] must be compelled to a new arbitration are barred by [claim preclusion]," including the "'division of jewelry' between Isaac and Daniel," which entailed "'missing stones'" as well as other "diamonds 'missing' from 'PMI's old inventory lists.'"

### H. *Isaac's April 2021 lawsuit*

While the denial of Isaac's petition to compel a new arbitration was pending on appeal, he and PMI sued Daniel in April 2021 for (1) breach of fiduciary duty, (2) fraud, (3) conversion, (4) tortious interference with a contract, (5) tortious interference with a prospective economic advantage, and (6) unjust enrichment. Isaac alleged that Daniel had breached a fiduciary duty by converting various pieces of jewelry.

This lawsuit made no reference to the kashet.

Isaac and PMI voluntarily dismissed this lawsuit with prejudice.

## II. Procedural Background

### A. *Pleadings*

On July 12, 2023, Isaac and PMI filed this current lawsuit against Daniel. In the operative first amended complaint, Isaac and PMI allege that Daniel had placed "bags of jewelry" and other items into the kashet in February 2017, that Isaac and Daniel had "orally agreed" that the "kashet would be opened jointly" upon demand, that Isaac's attorney demanded that the

6

kashet be opened on June 2, 2022, and that Daniel refused. The operative complaint further alleges that Daniel's refusal constitutes a breach of the oral contract, a breach of the fiduciary duty Daniel owes Isaac, and a conversion of the items contained in the kashet;[4] as to all three counts, the complaint alleges that Isaac and PMI suffered the injury of being "deprived of the possession and rightful ownership of the contents of the [k]ashet" and/or "denied the opportunity to sell the jewelry" and contents of the kashet.

### B.    *Demurrer*

Daniel demurred to the operative complaint on the grounds that it is (1) barred by the doctrine of claim preclusion, (2)

---

[4]    The operative complaint also alleges claims for constructive trust / unjust enrichment, a temporary restraining order, and declaratory relief. We need not independently examine these claims because a constructive trust and a temporary restraining order are remedies rather than substantive bases for relief (*American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1485 [constructive trust "is not 'a substantive device but merely a claim for relief'"]; *Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 955 [unjust enrichment "'is not a cause of action'"]; *McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1159 ["'[i]njunctive relief is a remedy and not, in itself, a cause of action . . .'"]), and the request for declaratory relief pled in the complaint is entirely derivative of the claims discussed above in the text (*Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794, 800 [derivative declaratory relief causes of action rise or fall on the validity of the substantive causes of action they duplicate]).

uncertain, and (3) barred by the statute of limitations.[5]  After the parties filed further briefs, the trial court held a hearing on April 10, 2024 that concluded with a request for supplemental briefing, then the parties filed a new round of supplemental briefs and Isaac filed an unsolicited declaration.  After the court held a second hearing, the court issued a written ruling finding that Isaac's lawsuit was barred by claim preclusion because the "prior litigation [between the brothers] has resolved what there is to resolve about rights over the [kashet] and opening it."

### C.    *Appeal*

Following entry of a judgment of dismissal, Isaac and PMI filed this timely appeal.

## DISCUSSION

Isaac and PMI argue that the trial court erred in sustaining the demurrer to their claims for breach of contract, breach of fiduciary duty, and conversion on the ground of claim preclusion.

In reviewing a trial court's dismissal of claims on demurrer, "we ask two questions: '(1) Was the demurrer properly sustained; and (2) Was leave to amend properly denied?' [Citation.]  In answering the first question, 'we ask whether the operative complaint "'states facts sufficient to constitute a cause of action.'"' [Citations.]  In undertaking that inquiry, 'we accept as true all "'"material facts properly pleaded"'"' in the operative complaint [citation] as well as facts subject to judicial notice, giving "'"precedence"'" to the judicially noticed facts if they "'"contradict

---

[5]    Daniel also moved to strike the operative complaint's allegations seeking attorney fees and punitive damages, but the trial court's order sustaining the demurrer rendered moot the motion to strike.

8

the allegations"'" [citations]. In answering the second question, we ask ""whether """there is a reasonable possibility that the defect [in the operative complaint] can be cured by amendment."""""" [Citation.] We review the trial court's ruling regarding the first question de novo [citation], and review its ruling regarding the second for an abuse of discretion [citations]." (*City of Norwalk v. City of Cerritos* (2024) 99 Cal.App.5th 977, 985.)

## I.  The Demurrer Was Properly Sustained

A demurer may be sustained against a cause of action on the ground that it is barred by the doctrine of claim preclusion. (*Robinson v. Southern Counties Oil Co.* (2020) 53 Cal.App.5th 476, 481.) "Claim preclusion, [which is] the ""primary aspect"" of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit between the same parties." (*Gray v. La Salle Bank, N.A.* (2023) 95 Cal.App.5th 932, 949, quoting *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823-824.) It arises "if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit" (which includes "[a] dismissal with prejudice"). (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91.) Claim preclusion is meant "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate, [thereby] protect[ing] their adversaries from the expense and vexation attending multiple lawsuits . . . ." (*Montana v. United States* (1979) 440 U.S. 147, 153-154.)

Claim preclusion bars Isaac's and PMI's causes of action for breach of contract, breach of fiduciary duty, and conversion. Isaac's 2020 petition to set aside the 2017 judgment confirming the amended arbitration award and to compel a new arbitration

alleged precisely the same facts underlying the lawsuit before us now (namely, that Daniel wrongfully refused to open the kashet containing jewelry and other items belonging to PMI (and hence, to Isaac)), and alleged precisely the same injury (namely, Daniel's wrongful continued possession of jewelry and other valuables belonging to PMI (and hence, to Isaac)). That petition was litigated to finality, and ultimately resolved in Daniel's favor both in the trial court and on appeal. Isaac's and PMI's lawsuit against Daniel in April 2021 alleged that Daniel had breached his fiduciary duty to Isaac and had converted various items of jewelry; although that lawsuit did not specifically allege the conversion of jewelry and other items from the kashet, its more general allegations that Daniel converted jewelry and valuables from PMI did not carve out PMI's jewelry and valuables held in the kashet, and those items were—or, at a minimum, could have been—adjudicated in that lawsuit. That lawsuit was litigated to finality when Isaac and PMI voluntarily dismissed it with prejudice.

Isaac and PMI respond with what boil down to four arguments.

First, they argue that this current lawsuit involves a different "primary right" than the 2020 and 2021 lawsuits, such that claim preclusion does not apply. To be sure, California follows the primary rights theory. This theory provides that "'one injury gives rise to only one claim for relief'" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798 (*Boeken*)), and accordingly prohibits a plaintiff from "'divid[ing] a primary right and enforc[ing] it in two suits'" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904; see *Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 708). A primary

10

right is not defined by the legal theory asserted (*Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 677-678) or by the remedy sought (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681-682 (*Crowley*); *Hi-Desert Medical Center v. Douglas* (2015) 239 Cal.App.4th 717, 734).  Instead, a "primary right" is defined by "the plaintiff's right to be free from the particular injury suffered." (*Crowley*, at p. 682.)  As a general matter, "the same primary right" is at stake "[w]hen two actions involving the same parties seek compensation for the same harm." (*Boeken*, at p. 798.)  Here, this lawsuit involves the same primary right as the 2020 and 2021 lawsuits:  In those lawsuits, Isaac and/or PMI claimed to be injured because Daniel wrongfully took jewelry and other items belonging to Isaac and/or PMI; and the current lawsuit claims precisely the same injury— namely, that Daniel wrongfully deprived Isaac and PMI of "possession and rightful ownership" of the subset of PMI's inventory contained in the kashet.  Contrary to what Isaac and PMI assert, the fact that this lawsuit alleges different causes of action (and, in particular, a breach of contract cause of action) is of no moment because, as noted above, the primary rights theory turns on the injury suffered and not the legal theory asserted. Along similar lines, the fact that Isaac had a different motive in asking Daniel to open the kashet previously (that is, to provide evidence for a Customs investigation) is also of no moment because Isaac suffered the same injury as alleged here and now (namely, lack of access to the kashet's contents) and because Isaac could have alleged other motives in that prior lawsuit. Isaac and PMI further argue that no prior lawsuit mentions the kashet expressly, but this argument is disingenuous given that many of the prior lawsuits refer to the "sealed box" allegedly kept

11

by Daniel, and Isaac and PMI concede that the kashet *is* the sealed box referred to in those prior lawsuits.

Second, Isaac and PMI argue that the prior lawsuits only dealt with *ownership* of PMI's jewelry whereas this lawsuit deals with *possession* of PMI's jewelry—and the claim of possession of the subset of that jewelry in the kashet was not "'related to the dissolution of PMI'" and also did not become ripe until Daniel refused to open the kashet in June 2022. This argument is also disingenuous. The assertion that this lawsuit only deals with possession and the prior lawsuits only dealt with ownership flatly contradicts the allegations in the operative complaint as well as the allegations alleged by Isaac and/or PMI in the prior lawsuits: The operative complaint here alleges that Daniel's conduct in refusing to open the kashet "deprived [Isaac and PMI] of *possession and rightful ownership* of the contents of the [k]ashet" (italics added), and the 2020 and 2021 lawsuits also dealt with Isaac's and/or PMI's ownership and possessory rights to PMI's inventory, including the kashet. Although Isaac in some of the prior lawsuits had alleged that ownership of PMI's assets was never litigated, that allegation is flatly contradicted by the judicially noticeable litigation history between the brothers. The assertion that the contents of the kashet are unrelated to the dissolution of PMI also flatly contradicts other portions of Isaac's and PMI's briefs in this very appeal acknowledging the prior lawsuits alleged that the contents of the kashet were "indisputably" part of PMI's inventory. And the assertion that June 2022 was the first time Daniel refused to open the kashet is flatly contradicted by Isaac's allegation in the 2020 lawsuit that Daniel refused Isaac's request to open the kashet back in 2019; suffice it to say, Isaac and PMI do not get to sidestep the

12

conclusive effect of the prior lawsuits every time Isaac asks Daniel to open the kashet—were that the case, claim preclusion would no longer exist as a doctrine.

Third, Isaac and PMI contend that a court may elect not to apply the doctrine of claim preclusion for equitable reasons. However, they never asked the trial court to exercise this discretion, and did not raise it before this court until their reply brief. They have accordingly waived this issue (*Piedmont Capital Management, L.L.C. v. McElfish* (2023) 94 Cal.App.5th 961, 970, fn. 6), and we would reject the request even if it were preserved.

Fourth, Isaac and PMI contend that the trial court did not "consider or give appropriate weight" to many of the facts Isaac and PMI proffered in Isaac's supplemental declaration following the first demurrer hearing. This contention ignores that a demurrer tests the sufficiency of the allegations in the operative pleading, not the sufficiency of proof to support those allegations. The additional facts in the declaration also do nothing to alter the unavoidable truth that this lawsuit alleges the same injury as two of the prior lawsuits.[6]

Because the doctrine of claim preclusion warrants dismissal, we need not consider whether dismissal is also warranted based on the statute of limitations.

## II. Leave to Amend Was Properly Denied

The trial court did not abuse its discretion in denying Isaac and PMI leave to amend because there is no reasonable possibility that any amendment could cure the bar of claim preclusion. Isaac and PMI are stuck with the allegations they made in the operative complaint in this case and in the operative

---

[6] We deny Daniel's passing request to declare Isaac "a vexatious litigant in both this Court and in the lower court."

complaints in the prior actions; those allegations conclusively establish that this lawsuit is nothing more than a retread of what was or what should have been litigated before. Isaac and PMI urge us to "liberally construe" the pleadings, but this rule of construction cannot alter the substance of the allegations. They also assert that no one yet knows *what* is in the kashet and that the kashet may contain unexpected items. But what we *do* know, based on the allegations, is the kashet contains items that are part of PMI's inventory, that Isaac and Daniel have exhaustively and conclusively litigated the disposition of that inventory, and that this lawsuit seeks to do the same thing. Isaac and PMI lastly assert that no final decision should be made until the parties conduct more discovery. This assertion misapprehends the purpose of a demurer and, if accepted, would obliterate the doctrine of claim preclusion.

## DISPOSITION

The judgment is affirmed. Daniel is entitled to his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
MOOR

14

_____, J.
KUMAR\*

---

\*      Judge of the Los Angeles County Superior Court (retired), assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.