Filed 12/22/25  Byrd v. County of Los Angeles CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LOUIS BYRD, Sr., et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF LOS ANGELES,<br><br>Defendant and Respondent. | B340865<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV14014) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lia Martin, Judge. Affirmed.

Vokshori Law Group, N. Stephen Vokshori and Daniel J. Coplan for Plaintiffs and Appellants.

Collins + Collins, Erin R. Dunkerly, Angelica Victoria O. De Mesa and James C. Jardin for Defendant and Respondent.

————————————

Plaintiffs Louis Byrd, Sr., and Laura Byrd, as trustee of the Byrd Family Trust,[1] appeal the trial court's order dismissing with prejudice their cause of action for a tax refund against the County of Los Angeles. On the narrow issue raised by this appeal, we affirm.

## FACTUAL BACKGROUND

### I. The County's Property Assessed Clean Energy (PACE) Program

In 2008, the California Legislature authorized local governments to implement PACE programs for homeowners to finance energy efficiency and water conservation improvements to their properties.[2] The County enacted its PACE program in 2012. The program allowed homeowners to borrow the cost of covered home improvements by entering into an assessment agreement with the County. The County placed a PACE lien on the homeowner's property in the amount of the principal of the loan plus fees and capitalized interest. The PACE lien took a first priority secured position on the property, and the County collected loan payments via supplemental assessments on the homeowner's annual property tax bill. The PACE lien remained

---

[1] Louis Byrd, Jr., was previously trustee, and he filed the original complaint in this action along with Louis Byrd, Sr. The parties do not materially distinguish between the original and successor trustees. We refer to them, collectively with Byrd, Sr., as the Byrds. (See *Fiduciary Trust Internat. of California v. Klein* (2017) 9 Cal.App.5th 1184, 1197 ["[t]he 'powers of a trustee . . . are inherent in the office of trustee' "].)

[2] We rely upon the allegations of the operative first amended complaint for this factual background. (See *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100 (*Loeffler*) [we " 'assume the truth of the complaint's properly pleaded . . . factual allegations' "].)

on the title until fully repaid; if the property was sold to a new owner, that new owner became responsible for the payments. The Byrds allege the County's PACE assessment agreements are unconscionable contracts of adhesion, and the County knew or should have known they would harm vulnerable homeowners.

The County delegated administration of its PACE program to two private corporations, one of which is Renovate America. Renovate America marketed its PACE finance offerings under the brand name "HERO." It hired registered contractors to sell and install home improvements financed by their HERO loan products. The program incentivized Renovate America to maximize the number of PACE loans and to overcharge homeowners.

The County packaged PACE loans into bond tranches that it sold to Wall Street investors. The County passed the costs of the interest it had to pay its bondholders to the PACE program participants in the form of interest rates materially higher than comparable rates on home equity loans and lines of credit.

## II.     The Byrds' Participation in the PACE Program

Byrd, Sr., owned a two-unit residence in Lynwood (the Property). When the first amended complaint was filed in June 2023, Byrd, Sr., was 88 years old and suffered from dementia. In May 2015, he transferred ownership of the Property to the Trust, for which his son, Byrd, Jr., served as trustee.

In December 2015, Byrd, Sr., purportedly entered into a Renovate America HERO PACE assessment contract with the County to obtain a PACE loan for home improvements. Byrd, Jr., purportedly signed the loan application as trustee, but he did not know about the transaction until the summer of 2020. The Byrds claim their signatures on the loan documents were forged. The loan was funded in February 2016 in an amount of $77,395.20,

3

which resulted in a supplemental assessment of $8,253.02 to the Property's annual tax bill. That was a 300 percent increase in the Property's annual taxes. The County received payments from the Trust for the PACE assessment. In November 2019, Byrd, Sr., filed for bankruptcy. On July 21, 2021, the Trust filed an appeal of the PACE assessment with the County of Los Angeles Assessment Appeals Board, requesting a refund of the taxes attributable to the PACE loan.

The Property was sold on February 25, 2022, and the Byrds paid off the PACE assessment in full on that date. On November 9, 2022, the appeals board denied the Trust's refund request.

## PROCEDURAL HISTORY

### I.     The Original Complaint

The Byrds filed the original complaint against the County, Renovate America, and other defendants on April 13, 2021.[3] They alleged the following causes of action against the County:

(1)     financial elder abuse by using an unconscionable contract of adhesion and by recording the PACE assessment on the Property (Welf. & Inst. Code, § 15657.5; second cause of action);

(2)     declaratory relief that the assessment agreement is unconscionable (Civ. Code, § 1670.5; fourth cause of action);

(3)     declaratory relief that the assessment agreement is unlawful and unenforceable (Civ. Code, § 1668; fifth cause of action);

---

[3]     Because the County is the only defendant that is a party to this appeal, we limit our discussion to the causes of action against it.

4

(4)    cancellation of tax because the PACE assessment is unlawful and unenforceable (Rev. & Tax. Code, § 4986; seventh cause of action);

(5)    to quiet title to the Property and to determine the County has no valid liens (eighth cause of action); and

(6)    declaratory relief that the assessment agreement and PACE assessments are unlawful, unenforceable, and should be canceled, and the PACE loan extinguished (ninth cause of action).

## II.    The Trial Court Sustains the County's Demurrer to the Original Complaint

The County demurred to the original complaint on four grounds: (1) failure to exhaust administrative remedies; (2) immunity pursuant to Government Code section 860.2 and Revenue and Taxation Code section 4807; (3) failure to timely file a claim (Gov. Code, §§ 905, 911.2, 945.4); and (4) expiration of the statute of limitations for elder abuse (Welf. & Inst. Code, § 15657.7; Code Civ. Proc., § 337).

The Byrds argued exhaustion was excused because administrative remedies were inadequate: they were "not merely seeking a refund" of the assessment payments they already made, but were "seeking cancellation of the assessment agreement, removal of the assessment, removal of the lien on [their] property, and money damages from the County"; and "[t]he County has provided no administrative procedure by which it can determine the validity of PACE liens or effectuate their cancellation." They also argued their claims were timely because they were exempt from complying with the timing requirements of the Government Code (see Gov. Code, § 905, subd. (h)), they suffered a continuing injury, and they did not discover their claims until Byrd, Sr., filed for bankruptcy.

5

As to immunity, the Byrds argued the issue was moot "[a]s to the issue of collection of taxes" because the Property had been sold. They did not otherwise squarely respond to the argument or mention Government Code section 860.2 or Revenue and Taxation Code section 4807. Instead, they discussed the general notion of government tort liability, immunity pursuant to Government Code section 818, and "sovereign" immunity.

The Byrds generally requested leave to amend to remedy any defects in the complaint. Their attorney provided a declaration stating his belief "[t]he strongest point[] in the [d]emurrer" was the County's argument the causes of action were barred by the Government Claims Act (§ 810 et seq.). Thus, the Byrds filed an assessment appeal on July 22, 2021, "in order to meet the requirements of the Government Claims Act." Counsel requested 180 days leave to amend to "allow the . . . [a]ppeals [b]oard to conclude their proceedings."

The trial court issued a tentative ruling indicating it intended to reject most of the County's arguments, but to sustain the demurrer as to all the causes of action "on the grounds [the] County is immune for any act or omission in the interpretation or application of any law relating to a tax, and no suit against [the] County may prevent or enjoin the collection of property taxes sought to be collected (Gov. Code, § 860.2; Rev. & Tax. Code, § 4807.)."

At the hearing on the motion on October 19, 2022, the Byrds reiterated their position "the issue of collecting a tax is kind of moot," and "[w]hat remains is the issue of a fraudulent contractual assessment against [their] property." The Byrds' counsel requested leave to amend to add one or two tort claims and "to clarify some of the changes and facts." The County responded that the Byrds' proposed amendments would "not

6

change . . . this is still a tax matter" and the County was immune pursuant to Government Code section 860.2 and Revenue and Taxation Code section 4807.

The trial court adopted its tentative, as modified to apply to all causes of action against the County. It entered an order dismissing the action with prejudice as to the County. The Byrds did not appeal.

### III.    The First Amended Complaint

On January 23, 2023, the Byrds moved for leave to file an amended complaint. They sought to: substitute the names of two Doe defendants they had learned through discovery; add a new defendant; add several causes of action against the new parties; add a new cause of action for "refund of taxes against [the] County"; and add some new factual allegations. Their motion focused on the proposed amendment to name the Doe defendants and generally argued amendment was appropriate because of "newly discovered evidence." Counsel's declaration conclusorily stated the refund of tax cause of action against the County "arose after the ruling on the [d]emurrer and thus could not have been plead at any earlier date."

At a hearing on the motion, the trial court indicated its intention to grant the motion "with the provision that [the Byrds] submit a revised version of the Proposed [first amended complaint] to clarify that the previously dismissed defendants in this case were not being renamed in the [first amended complaint]." The Byrds' counsel indicated the revised first amended complaint "remove[d] the dismissed defendants from the caption and . . . confirm[ed] . . . they have been dismissed and are not being brought back into the case with the [first amended complaint]." Nevertheless, the County remained in the caption of

7

the proposed first amended complaint and the ninth cause of action was pled against it.

On June 1, 2023, the trial court granted the motion to file the amended complaint. The first amended complaint was filed the next day. It alleged a single cause of action against the County for a tax refund (see Rev. & Tax. Code, § 5140; ninth cause of action) on the ground the "HERO Pace Contract is unlawful and unenforceable" and thus "[t]he County's levy and charge of taxes and fees" via "special assessments" were illegal.

## IV. The Trial Court Sustains the County's Demurrer to the First Amended Complaint

The County demurred to the first amended complaint on the ground the ninth cause of action was barred by res judicata. The Byrds opposed, arguing the appeals board's denial of their request for a refund on November 9, 2022, "gave rise to a new cause of action" for a refund that "could not have been alleged at any earlier point in time." They relied upon a sales tax statute to argue res judicata was inapplicable because their new claim involved a different quarterly period. (See Rev. & Tax. Code, §§ 6001, 7176.) They also argued their original complaint was defective in seeking cancellation of the tax, and they had remedied that curable defect by now seeking a refund.

Before the hearing, the trial court announced its tentative ruling to sustain the County's motion. The Byrds argued they believed the original dismissal "was limited to the issue of immunity under [Revenue and Taxation Code] section 4807," and therefore, "the court never reached the merits of . . . a claim for refund." The County pointed out the court's original dismissal had also been premised upon Government Code section 860.2, "that no suit can basically prevent the County from collecting taxes." The trial court adopted its tentative ruling sustaining the

8

County's demurrer to the first amended complaint without leave to amend and dismissing the County with prejudice.

The order was entered on July 9, 2024, and served on July 11, 2024. (See Code Civ. Proc., §§ 581, subd. (f)(1), 581d.) The Byrds timely appealed. (See Cal. Rules of Court, rule 8.104(a)(1)(B); *Save Berkeley's Neighborhoods v. Regents of University of California* (2021) 70 Cal.App.5th 705, 714 [" 'a judgment disposing of all the issues as to one party is appealable' "].)

## DISCUSSION

## I.     The Byrds Have Not Shown the Trial Court Erred in Dismissing the Ninth Cause of Action Without Leave to Amend

The trial court sustained the County's demurrer on the ground the Byrds' ninth cause of action was barred by the doctrine of res judicata. The Byrds have not demonstrated that was in error.

"[C]laim preclusion and issue preclusion [are] two separate 'aspects' of an overarching doctrine" of res judicata. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823 (*DKN Holdings*).) "Claim preclusion, [sometimes called] res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citation.] Issue preclusion, . . . historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit." (*Id.* at p. 824.)

Claim preclusion and issue preclusion "have different requirements and effects." (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.) "Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*DKN Holdings*,

9

*supra*, 61 Cal.4th at p. 824.) "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.) Because we conclude the trial court correctly determined the Byrds' ninth cause of action was barred by claim preclusion, we do not consider whether it was also barred by issue preclusion.

### A. Standard of Review

"We apply de novo review to an order sustaining a demurrer." (*SI 59 LLC v. Variel Warner Ventures, LLC* (2018) 29 Cal.App.5th 146, 152; see also *Loeffler*, *supra*, 58 Cal.4th at p. 1100.)

### B. The Original Dismissal Involved the Same Parties

The original complaint and the first amended complaint both pled causes of action against the County. The Byrds do not argue different parties were involved. We therefore conclude that element is satisfied. (See *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1282 [" ' "our review . . . is limited to issues [that] have been adequately raised" ' " in the opening brief].)

### C. The Original Dismissal Was a Final Judgment on the Merits

The Byrds do not dispute the trial court's original dismissal order was a final judgment. (See Code Civ. Proc., §§ 581, subd. (f)(1), 581d.) However, they argue the dismissal did not "[r]each[] [t]he [m]erits" of the new refund cause of action. But the pertinent inquiry for this element is "whether the present suit is brought 'after a final judgment on the merits in the first suit.' " (*Gray v. La Salle Bank, N.A.* (2023) 95 Cal.App.5th 932,

950 (*Gray*).) Therefore, our focus is not on whether the original dismissal addressed the merits of the Byrds' *new refund claim*, but rather on whether the trial court's order dismissed the causes of action pled *in the first action* on their merits.

"A judgment is on the merits for purposes of res judicata 'if the substance of the claim is tried and determined.'" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 77.) In general, "for purposes of applying the doctrine of res judicata, . . . a dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 793 (*Boeken*).) " ' "[W]ith prejudice" . . . means the plaintiff's right of action is terminated and may not be revived,' " and that sort of dismissal " 'bars any future action on the same subject matter.' " (*Ibid.*)

It is undisputed the causes of action pled against the County in the original complaint were all dismissed with prejudice and without leave to amend. In the trial court, the Byrds argued the original dismissal was not on the merits because the demurrer was "to potentially curable defects in the complaint's allegations." The trial court disagreed; it explained it had "determined that there were no potentially curable defects in the [original] [c]omplaint's allegations," and thus, its earlier dismissal "was on the merits and final."

None of the arguments made by the Byrds persuades us the trial court erred. First, the Byrds again suggest the defects in their original complaint were merely "technical or formal" because they mistakenly sought the wrong remedy: cancellation of a tax instead of a refund. But as the trial court explained, it dismissed the Byrds' original causes of action against the County without leave to amend because it determined the defects therein were not curable. For that reason, the cases relied upon by the

11

Byrds in which complaints were dismissed with prejudice after trial courts had previously granted leave to amend to correct a defect in form are inapposite. (See *Goddard v. Security Title Insurance & Guarantee Co.* (1939) 14 Cal.2d 47, 50, 53, 55; *Keidatz v. Albany* (1952) 39 Cal.2d 826, 828 ["the former judgment was entered after a general demurrer had been sustained with leave to amend"].) To the extent the Byrds are arguing the trial court erred in the original dismissal order,[4] it is too late for them to do so now. (See *Aerojet-General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 392 (*Aerojet-General*) ["the time for [the plaintiff] to have objected was before the judgment became final"]; see also *Gray*, *supra*, 95 Cal.App.5th at p. 950, fn. 9 [listing possible nonmerits grounds for dismissal].) They did not appeal the original order of dismissal, and its merits are not now before us.

Second, we reject the Byrds' suggestion they "allege[d] new and additional facts" in their first amended complaint to "cure the 'immunity' defect in the [o]riginal [c]omplaint" by alleging they exhausted their administrative remedies. The trial court did not determine the original complaint was defective for failure to exhaust or because the "claim . . . for a refund . . . was not ripe at the time." On the contrary, the trial court rejected the County's argument regarding exhaustion and expressly adopted the Byrds' position exhaustion was not required because administrative

---

[4]     Our Supreme Court recently clarified the procedure to challenge the validity of a PACE assessment: "first pay the amounts due and then file refund requests under [Revenue and Taxation Code] section 5096." (*Morgan v. Ygrene Energy Fund, Inc.* (Dec. 4, 2025, S277628) __ Cal.5th __ [2025 Cal. Lexis 7978, at *36].)

remedies were inadequate.[5] Their new allegations regarding exhaustion therefore did not cure any defects the trial court had previously identified in the original complaint. (Cf. *Sterling v. Galen* (1966) 242 Cal.App.2d 178, 182 [no preclusion where " ' "new or additional facts are alleged that cure the defects in the original pleading" ' "].)

Thus, the Byrds have not shown the trial court erred in determining the original dismissal was a final judgment on the merits. (See *Tukes v. Richard* (2022) 81 Cal.App.5th 1, 20 ["one challenging a judgment after demurrer . . . bears the burden to demonstrate reversible error"].)

## D. The Original Complaint and First Amended Complaint Involved the Same Primary Right

"To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.' " (*Boeken, supra*, 48 Cal.4th at p. 797.) In that context, a "cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory . . .

---

[5] In their reply brief, the Byrds argue the County's original demurrer insisted they had to file a refund request in order to exhaust their administrative remedies, and thus the County should be estopped from arguing otherwise pursuant to Evidence Code section 623. We do not believe that statute is relevant here as the County did not induce the Byrds to take a particular course of action that caused them injury. (See *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 459 [requirements of equitable estoppel].) Instead, the Byrds' pending assessment appeal was brought to the trial court's attention at the time of the hearing on the demurrer and the court nonetheless sustained the demurrer without leave to amend on the ground of immunity, not failure to exhaust.

advanced." (*Id.* at p. 798; see also *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904 (*Mycogen*) [primary right is distinguished from both " 'the *legal theory* [upon] which liability for that injury is premised' " and " 'the *remedy* sought' "].)

The primary rights theory " 'provides that a "cause of action" [comprises] a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.' " (*Mycogen*, *supra*, 28 Cal.4th at p. 904.) That is, " 'the primary right is simply the plaintiff's right to be free from the particular injury suffered.' " (*Ibid.*; *Boeken*, *supra*, 48 Cal.4th at p. 798 ["[U]nder the primary rights theory, the determinative factor is the harm suffered."].) " ' "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action . . . ." ' " (*Mycogen*, at p. 904.)

The trial court explained the Byrds' new refund cause of action "assert[ed] the same primary rights against the County as in the [original] [c]omplaint." The first amended complaint and the original complaint both "involve[] the same property, the same agreement, the same loan, and the same allegedly fraudulent 'scheme.' "

We agree both complaints involve the same primary right of the Byrds to be free of the County's imposition of property tax assessments arising from an allegedly unlawful PACE loan. (See *5th & LA v. Western Waterproofing Co., Inc.* (2023) 87 Cal.App.5th 781, 789 (*5th & LA*) ["both lawsuits are about the same primary right: the owner's right to be free of harm from the

14

company's materials or labor"]; *Hi-Desert Medical Center v. Douglas* (2015) 239 Cal.App.4th 717, 733 (*Hi-Desert*) [both "actions . . . were based upon the same primary right[: the] alleged deprivation of a higher level of Medi-Cal reimbursements to noncontract hospitals"].) That issue was litigated and resolved in the original dismissal order, and there has been neither a "new breach" by the County nor any new harm suffered by the Byrds. (*5th & LA*, at p. 789.)

The Byrds do not discuss the primary rights doctrine, let alone argue the refund cause of action arises from a different primary right. Instead, they rely upon *Bame v. City of Del Mar* (2001) 86 Cal.App.4th 1346, to argue the trial court's dismissal of the original complaint on the immunity ground "did not encompass the Trust's right to seek a refund." But *Bame* concerned issue preclusion, not claim preclusion. (See *Bame*, at pp. 1363–1364; see also *DKN Holdings*, *supra*, 61 Cal.4th at p. 825.) Its analysis of whether a new issue was identical to one previously litigated for purposes of *issue preclusion* does not bear upon whether the original complaint and first amended complaint here involved the same primary right for purposes of *claim preclusion*. (See *Bame*, at pp. 1364–1365.) As noted above, claim preclusion bars not only claims that were, but also claims that should have been, advanced in a previous suit involving the same parties.

The Byrds argue they are now seeking a different remedy. Even if true, "that was their litigation choice" and does not change the fact "[t]he same primary right is at stake." (*Hi-Desert*, *supra*, 239 Cal.App.4th at p. 734.)

That conclusion is not altered because the Byrds have now paid off the previously assessed tax in full. The new payment was caused by the underlying PACE assessment, of which the Byrds

15

were aware when the original complaint was filed. (See *5th & LA*, *supra*, 87 Cal.App.5th at p. 789 ["[n]ew leaks are pertinent only if the owner asserts they are from a cause the owner did not know about and could not have known about in its first lawsuit" (italics omitted)]; *Hi-Desert*, *supra*, 239 Cal.App.4th at p. 734 [petitioners "knew when they filed their original petition . . . they would lose monies"].) When the Byrds filed their original complaint, they knew their property taxes had increased because of the PACE assessment, and they had already made payments to the County. It is irrelevant that the assessment was fully paid only upon the Property's sale on February 25, 2022. (See *Hi-Desert*, at p. 734 ["[t]he amount of monies that they would be denied was irrelevant"].)

The Byrds argue their refund claim "was not ripe" when the trial court ruled on the demurrer to the original complaint. But at the time of the original dismissal, the Byrds did not take the position they could not obtain a refund of the portion of the PACE assessment they had already paid; rather, they told the trial court their administrative remedies were inadequate because "they [were] not merely seeking a refund" but were generally challenging "the validity of PACE liens." The trial court agreed with them. If the court mischaracterized their position or otherwise erred, the Byrds could have challenged the court's conclusion. Because they did not, we do not consider the issue further here. (See *Aerojet-General*, *supra*, 97 Cal.App.4th at p. 392.)

Likewise, we are not persuaded by the Byrds' assertion they were unable to bring a refund claim "any sooner" than June 2023. At the time of the October 2022 oral argument on the original complaint, the Byrd's assessment appeal had been pending over a year. The Byrds asked for leave to amend to add a

16

few new tort claims, specifically noting in a declaration the pendency of the assessment appeal,[6] which the trial court rejected. The Byrds inexplicably failed to appeal the trial court's ruling and judgment in favor of the County. The time to have appealed that decision was at that time.

## DISPOSITION

The judgment is affirmed. The County is entitled to costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(1)–(2).)

RICHARDSON, J.

WE CONCUR:

LUI, P. J.

SIGGINS, J.*

---

[6] While not pointed out by the County, it seems the Byrds could have deemed their assessment appeal denied six months after it was filed on July 21, 2021. (See *Geneva Towers Ltd. Partnership v. City and County of San Francisco* (2003) 29 Cal.4th 769, 773 [Rev. & Tax. Code, § 5141 "permits, but does not require, a claimant to deem its claim denied if the county . . . fails to give notice of its action within six months of the filing of the claim"]; see also § 5141, subd. (b).) That was in January 2022, approximately 10 months prior to the hearing on the original demurrer.

* Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17